Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 3741 | DATE | Mar. 5, 2002 |
| CASE TITLE | Jay Bush v United Parcel Service | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

memorandum opinion

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed with prejudice and without costs by agreement.
(10) ■ [Other docket entry]

## Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment is granted.

(11) ● [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | Document Number |
| X | Notices mailed by judge's staff. | MAR 06 2002 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| GDS | courtroom deputy's initials | 02 MAR -5 PM 3:00 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAY BUSH,                          )
                                   )
            Plaintiff,             )
                                   )   No.   99 C 3741
    v.                             )
                                   )   Judge Robert W. Gettleman
UNITED PARCEL SERVICE,             )
                                   )
            Defendant.             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jay Bush has brought a fourth amended complaint against his employer, United Parcel Service, alleging racial discrimination pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. In particular, plaintiff alleges that a white mechanic was given a promotion to which plaintiff was entitled, solely because plaintiff is black. Defendant has moved for summary judgment. For the reasons set forth below, the motion is granted.

### History

This case has a long and tortured procedural history, beginning with plaintiff's charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") against defendant, alleging a hostile work environment. In his original complaint in this court, plaintiff sued defendant, and his union, Automobile Mechanics Union Local No. 701 ("Union"), alleging that defendant failed to promote him based on his race. Prior to effecting service, plaintiff filed an amended complaint, again alleging a failure to promote. Defendant moved to dismiss, arguing that the complaint varied from the scope of the EEOC charge. The court denied the motion on



that basis, but dismissed for failure to state a claim because the complaint failed to allege that plaintiff had applied for an open position and was rejected based on his race.

Plaintiff filed a three count second amended complaint, again alleging a failure to promote, but also adding a new claim for hostile work environment, and the claim against the Union for discriminating in its grievance procedures. Defendant and the Union moved to dismiss for failure to state a claim. The court agreed, and held that the hostile work environment claim was time barred, and that plaintiff had failed to allege that he had applied for and was rejected for any position within the relevant time period. The court therefore granted the motion to dismiss and entered judgment for defendants. An entry of judgment form AO 450 was docketed.

One month later, plaintiff submitted a motion for substitution of attorney, and for an extension of time to file a proposed third amended complaint. Defendant responded, arguing that this court lacked jurisdiction because plaintiff had not moved to amend the judgment nor sought leave to file a third amended complaint. Because the judgment on form AO 450 indicated only that defendants' motions to dismiss were granted, the court concluded that the judgment was not final and granted plaintiff leave to file a fourth amended complaint limited solely to the failure to promote claim. After denying plaintiff's motion to reconsider, the parties proceeded with discovery. Defendant's motion for summary judgment on the failure to promote claim is now ripe for review.

2

# Facts[1]

Plaintiff began work at defendant's Hopkins, Illinois, location as an apprentice mechanic in January 1996. He was promoted to journeyman on February 21, 1996. Plaintiff claims that he immediately noticed that the mechanics with the most seniority were white, and that the senior mechanics exercised their rights to bid for the day shift. As a result, the day shift mechanics were all white. At the time he began work, there were six supervisors and four managers in defendant's Central Illinois District, which included the Hopkins location. One of the six supervisors and one of the four managers were black.

In the Fall of 1996, after plaintiff had been with the company for approximately ten months, plaintiff spoke to Al Daniels, the lone black supervisor, about plaintiff's view that blacks were unrepresented in management. In plaintiff's opinion, this underrepresentation led to a racially charged atmosphere. Plaintiff told Daniels that blacks were not assigned to the tractor fleet, which plaintiff felt was the most desirable mechanic job. Plaintiff told Daniels that he wanted to be considered for a promotion to management. It is undisputed, however, that plaintiff never submitted a formal letter of intent to be considered for promotion to management.

Daniels told plaintiff there was nothing he could do for him and suggested that plaintiff speak with Daniels' manager, Joe Vorrier. Several days later plaintiff spoke with Vorrier, who is white, again expressing his concerns about racial imbalances. According to plaintiff, Vorrier

---

[1] The facts were taken from the parties' statements of undisputed facts submitted pursuant to L.R. 56.1, a rule which neither party fully understands. Defendant failed to include a factual description of the case in its legal memorandum, electing improperly to incorporate its L.R. 56.1 statement. See Duchossois Indus. Inc. v. Crawford & Co., 2001 WL 59031 (N.D. Ill. 2001). Plaintiff, on the other hand, not only incorporated its 56.1 statement improperly, but then proceeded to ignore the rule altogether by including in its memorandum factual statements with no supporting citations to any portion of the record.

3

stated that he would check into plaintiff's concerns and get back to him, and also stated that if plaintiff wanted to work around more blacks, Vorrier could transfer him to "Jeff Street," a reference to defendant's terminal on Jefferson Street in Chicago, where most of the mechanics were black.

Sometime in October 1997, Mike Brombosz, a white manager, allegedly announced a mechanics meeting that Don Pindel, a white mechanic on the day shift who had been with the company for over 13 years, had been assigned "administrative assistant" duties for the day shift. It is undisputed that Pindel did not receive a pay raise or any other monetary benefit. According to plaintiff, Pindel received access to a management office computer, an e-mail account, supervisory authority to assign start times for workers on the following shift, and authority to assign himself "unbid" overtime before his regularly scheduled start time. Pindel has submitted a declaration denying that he had any supervisory authority, including authority to discipline or make job assignments. He did, however, assign himself additional hours, which was successfully challenged in a union grievance by a senior mechanic. The mechanic received three hours of straight pay and Pindel was required to start at his scheduled time and not before. It is the decision to make Pindel the "administrative assistant" for the day shift that plaintiff charges as racially motivated.

## Legal Standards

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and

set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); Becker v. Tenebaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court must consider the record as a whole and draw all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services, Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). The moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsubishi Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence in support of the nonmoving parties' position is insufficient. There must be evidence on which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

## Discussion

Plaintiff may attempt to prove his race discrimination claims either by direct evidence of discrimination or, as is more common, through the indirect burden-shifting approach set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Because plaintiff has no direct evidence that the decision in question was made on a discriminatory basis, plaintiff proceeds under the latter. Under this framework, plaintiff must first establish a prima facie case of discrimination. St. Mary's Hospital Center v. Hicks, 509 U.S. 502, 505 (1993). If plaintiff succeeds in establishing a prima facie case, he creates a rebuttable presumption of discrimination and the burden shifts to defendant to articulate a legitimate non-discriminatory reason for the employment decision. If successful, the presumption of discrimination dissolves and the burden

5

shifts back to plaintiff to prove that the employer's proffered reason is a pretext for discrimination. Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir. 1994). At all times, plaintiff bears the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against him. Hughes v. Brown, 20 F.3d 745-747 (7th Cir. 1994).

Plaintiff claims that he was denied the "administrative assistant" position based on his race, in violation of Title VII. To establish a prima facie case of race discrimination under Title VII, plaintiff must show: 1) he is a member of a protected class; 2) he was qualified for the job in question or was meeting defendant's legitimate performance expectations; 3) he suffered an adverse employment action; and 4) defendant treated similarly situated persons not in the protected class more favorably. Simpson v. Borg Warner Automotive, Inc., 196 F.3d 873, 875 (7th Cir 1999). In failure to promote cases, elements 2 and 4 have been described as, 2) plaintiff applied for and was qualified for the position, and 4) a similarly or lesser qualified person was promoted. Pafford v. Herman, 148 F.3d 658, 669 (7th Cir. 1998). Obviously, however, the position sought must be a "promotion" such that a rejection amounts to an adverse employment action. See Ribando v. United Airlines, Inc., 200 F.3d 507, 510 (7th Cir. 1999) (adverse action must be more than an alteration of job responsibilities).

Plaintiff has no difficulty with element one. Defendant challenges plaintiff's ability to satisfy the remaining elements, however, arguing that: 1) there was no promotion or even open position, and even if there was plaintiff failed to apply; 2) plaintiff suffered no adverse employment action; and 3) the "position" was not awarded to a similarly situated person not in the protected class.

Defendant first argues that Pindel's assignment as not a promotion and, therefore, there was no position open from which plaintiff was rejected. It is undisputed that there is no official position at defendant called "administrative assistant." Nor is the position recognized as a bargaining unit position in the Union's collective bargaining agreement. Nor is it contested that plaintiff never formally applied for the position. Of course, since it was not a formal position and not posted as opened, plaintiff could not formally apply.

Closely connected with this argument, defendant also argues that defendant's failure to assign plaintiff to the administrative assistant position on the day shift is not an adverse employment action. First, Pindel received no extra monetary compensation. He was not entitled to work additional hours (and was prevented from doing so by the Union) and had little or no supervisory powers. His attempt to assign himself overtime resulted in the Union grievance, demonstrating that the position resulted in no financial gain.

In contrast, plaintiff argues that Pindel received benefits as a result of the assignment, including an e-mail account, access to a management computer, and the ability to assign overtime. The last argument regarding overtime is incorrect, because it is undisputed that Pindel's attempt to assign overtime outside the requirements of the collective bargaining agreement were immediately halted.

Although the Seventh Circuit has defined "adverse employment action" broadly, the adverse job action must be "materially adverse," meaning more than a "mere inconvenience or an alteration of job responsibilities." Ribando, 200 F.3d at 510. "[A] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

7

responsibilities, or other indices that might be unique to a particular situation." Id. (quoting Crady v. Liberty National Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)).

In the instant case, the failure to appoint plaintiff to the administrative assistant position given to Pindel was not an adverse employment action because the change in position would not have been material. It is undisputed that Pindel remained a mechanic with some additional, insignificant duties. Had plaintiff been given the job, his salary would have remained the same, he would still have been a mechanic, with the same benefits, the same material responsibilities, and some minor additional duties. He also might have had access to a computer, something he did not need to perform the critical functions of the mechanic's position. Plaintiff was unhappy with the conditions in general, and unhappy that he did not get what he calls a promotion, but "not everything that makes an employee unhappy is an actionable adverse action." Smart v. Ball State Univ., 89 F.3d 437, 440 (7th Cir. 1996). Accordingly, because the court concludes that the failure to appoint plaintiff to the administrative assistant position did not amount to an adverse employment action, plaintiff cannot establish a prima facie case of discrimination.

Moreover, even if the selection of Pindel over plaintiff (or more accurately, without consideration of plaintiff) could be considered an adverse action, defendant has articulated a legitimate, non-discriminatory reason for Pindel's selection, and plaintiff has no evidence of pretext. Defendant needed some administrative help for the day shift. It assigned some minor additional duties to an experienced day shift mechanic who had been with the company for 13 years. Defendant could not have given plaintiff the additional administrative duties for the day shift without first transferring plaintiff to the day shift from his assigned afternoon shift. That

8

transfer would have "bumped" plaintiff ahead of other, more senior mechanics, an undisputed violation of the collective bargaining agreement with the Union.[2]

There is no evidence in the record to suggest that this articulated reason for Pindel's selection is a pretext for intentional racial discrimination. To establish pretext, plaintiff relies predominately on his conversation in 1996 with Joe Vorrier, when Vorrier allegedly stated that if plaintiff wanted to work around blacks he should transfer to "Jeff Street." Vorrier denies making this statement as described by plaintiff, but even if he did, it occurred over a year before and was wholly unrelated to the decision in question. "Stray workplace comments unrelated to the alleged discriminatory employment decision are not sufficient to support an inference of discrimination." Schaffner v. Glenco Park District, 256 F.3d 616, 622 (7th Cir. 2001) (quoting Schreiner v. Caterpillar, Inc., 250 F.3d 1096, 1099 (7th Cir. 2001). Accordingly, Vorrier's comment is insufficient to establish that defendant's articulated reason for the decision is a pretext for intentional discrimination.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted.

ENTER: March 5, 2002

Robert W. Gettleman
United States District Judge

---

[2]The fact that Pindel was already on the day shift while plaintiff was not, also demonstrates that plaintiff and Pindel were not similarly situated, leaving plaintiff unable to establish the fourth element of a prima facie case.

9